Good morning, your honors. David Zugman on behalf of Mr. Gillespie. I'll do my best to reserve a couple of minutes for rebuttal. Your honors, I thought this was going to be a straightforward sentencing appeal. I thought it was going to be the judge imposed the maximum upward variance to ten years and that that wasn't justified. The judge didn't keep the guideline range in mind and that's how the opening brief was filed. Then the government's answering brief comes and the government got the guideline range wrong. They've now admitted that that happens. People, you know, make mistakes. But I didn't think that was the most important point I had made in my reply brief. In my reply brief I said they also breached the plea agreement by arguing a new theory as to why Mr. Gillespie could be held responsible for what it termed as the particularly noxious images, the prepubescent and sadomasochistic images in this child pornography case. It's plain in there that I say that this is a breach of the plea agreement. The government does not answer that and that has enormous consequences for the case. If the court finds a breach, then we need to get a remand before a different district court judge, which I think, as your honors have no doubt, is going to be important in this case because it appears that Judge Phillips was going to impose a ten-year sentence pretty much whatever the guideline range was. The guideline range at the beginning of sentencing was going to be above the 120 months and by the end of sentencing we got to ten years by an upward variance. So I'm not quite sure I understand your objection to this or the basis for your claim of a breach of the plea agreement. Fair enough, your honor. One of the specific provisions of the plea agreement is that the government and Mr. Gillespie stipulate, agree that he did not possess any sadomasochistic or prepubescent pictures. Let me ask you this. Was the district court judge bound by that stipulation? Absolutely not. Of course not. No. But the government was and the government in its answering brief said. No, no, no. But what happened before the district court judge? What position did they take before the district court judge? They took the position that there were no such images. They followed the plea agreement in the district court, but you can breach a plea agreement on appeal. I mean, we're dealing with what the sentence the district court judge imposed. I thought we were reviewing the district court judge's sentence. You are, your honor, but there's an independent line of case law that says the government stipulated it must abide the plea agreement even on appeal. They're not allowed to change horses. When the plain error argument comes up, you can say the district court did not err. They did not plainly err by including these images. That's totally fine. I wouldn't have had any quarrel with that kind of argument. What the government is disallowed from doing is offering. The district court, when the district court looked at the record before it, the sentencing record, the plea agreement, the stipulated factual basis, the probation officer's report and recommendation, the addendum to the report and recommendation, everything else that the district court references during the sentencing hearing, why wasn't it proper for the district court, why couldn't the district court find that this particular enhancement applied? Well, could is an important word, right? Obviously, the district court has discretion, and district courts aren't required to view the facts always in the same manner as every other district court would. I can see the district court had the power to impose a 10-year sentence. I think the district court erred. I'm not talking about the 10 years. I'm talking about just one particular enhancement that you're talking about. Well, that's the argument, the flyer Kuczynski argument, which is. That's another argument. Aren't there two separate enhancements here that you're dealing with? The argument as to why the district court erred is the same, which is there was never any proof about where the really bad images came from. They swept the drive for every possible image, including the temporary Internet files. The temporary Internet files are collected when you visit a website. There is no indication that you aren't deemed to possess or control things that are put into your cookies on your browser, because many computer users are completely unaware that such images are even downloaded. They never raised any of this with the district court. Correct. Well, they had a stipulation with the government that. But the pre-sentence report laid out. I'm arguing plain error. I concede, Your Honor, it wasn't raised below. I mean, it's a plain error argument. Yes. But I don't understand. Okay. So let me ask you this. Okay. Is it that there was no factual basis to support the district court judges? Insufficient factual basis. The factual basis was they didn't show that the images came from stuff that he had to have manipulated, or he downloaded stuff to CDs. They said it came from the CDs. So nobody objects. I mean, it's laid out in the district court, in the PSR. Correct. Where these images are found. No. It is not laid out. Well, it references. It talks about the three different possible sources. Correct. It's right there. There's 1202 images. No images are said, these came from this place. That does not exist in the PSR. No. Well, it says. Let me see if I have the report. As do I, Your Honor. So it talks about in paragraph 19 there are approximately eight video files. Yes, Your Honor. Among the video files were the following. Among the image files were the following. Correct. Temporary Internet files were located on the computer desktop, which depicted the following images. That's what I'm talking about. Okay. Temporary images are. Right. No. But my point, my concern is that for the district court. So here's this district court judge conducting the sentencing hearing. Yes. She has this in front of her. Yes. And nobody objects. Nobody says to her, well, we don't know how many files came, which of the files were on the Internet cache file or which were on the CDs or how many were on the CDs or how many were on the hard drive. Correct. Right? So nobody raises that with her. Nobody, and the defendant didn't object to these statements in this report. Why isn't this enough to show the connection that's required under the case law? Well, it's. Why is it even an error? I believe it's error because if you take a sweep of the drive and say, there are certain images that cause a six-level enhancement, you know, a guideline range change of two years, we don't know exactly where they came from. They could have come from this place where he's deemed not to have knowledge or they could have come from this place where he's deemed to have knowledge. You know, it's one-third. Is one-third the possibility of an error enough to impose, to say it's not. Let me ask you this. In the sentencing hearing, the district court judge refers to the FBI 302s. Yes. Were they presented to her? I wasn't at the sentencing hearing. I don't know whether they were physically in front of her. I didn't represent Mr. Gillespie. Well, she talks about them. She says the 302s are in the record. Correct. Suggesting that she read them. Now, what do we know? What do the 302s show? The 302s, I think, were the original interviews of Mr. Gillespie. And what did he admit during the course of those interviews? Well, there are two sets, though. There's one that occurred as part of the original, way back when, letters to the Swingers magazine. And that occurred, I think, in the late 1980s or early 1990s. Then there's the 302s with respect to the Davor, the Croatian, who was at the root of many of these cases. Does he acknowledge that he copied the files to CDs and made the videos and whatnot? He does not acknowledge that he copied all of the files to the CDs. But didn't he acknowledge, though, that he copied files from the computer to the CDs? He did acknowledge copying files from the computers to the CDs. He acknowledged his possession. He's pled guilty to that. But that's not the question. The question is whether these particularly bad images were found in an area where we can deem and say that he knew about them and they were there.  I mean, it absolutely could be the case that those images came from the proper place, that they were downloaded to the CDs, and there's no doubt about that, and game over. However, if that were the state of the record, I assume the government would have raised that. Second, we wouldn't be having this argument because I wouldn't have raised it. It seems clear. The government, Mr. Gillespie, entered into a plea agreement where we stipulated that he didn't have those images. So, agreed. The district court, you could say he didn't object and he lost the argument at that point. That's fine. You still have a breach of the plea agreement. There's no question that the government argued for a new theory of liability that they stipulated and agreed. We're talking about on appeal, though, not before the district court. I think that's consequential, but, you know. I have about a minute remaining. Can I reserve that? Yes. Thank you, Your Honor. May it please the Court, Nancy Spiegel for points of appeal in the United States of America. Your Honors, here Judge Phillips did not abuse her discretion in imposing a 120-month sentence. This defendant was a dangerous repeat offender. He demonstrated a long-term sexual interest in children, and the judge, furthermore, set forth many reasons pursuant to his conviction. I'm sorry. 3553A factors that contributed to her sentence. Well, she miscalculated the guidelines. They're there. Yes, that's true. You have to send it back for resentencing. Yes, that's true. So, no, he's correct. There was never any objection to these enhancements that we're talking about, the one for more than 600 images and the one for the sadomasochistic. That's correct. Images. That's correct. Okay, so the two of them combined add up to about seven levels. Nine levels. Nine levels together. Yes, that's correct. Quite a jump. Yes, that's correct. Okay, so they never objected, and I can understand why Judge Phillips, when you look at this pre-sentence report, would. . . There's no objection. Well, that's why we're in plain error here. So, but the case law seems to suggest, at least with respect to images that are on the cache file, the Internet cache files, that there needs to be some showing that the defendant has knowledge and there's some connection between the defendant and the images and some control or use of those files. That's correct. So what supports that here? Primarily what supports it is the defendant's admission during his interview that he viewed child pornography virtually every day at least three to four times a week, and the fact that he admitted that the . . . Now, is that . . . are those the admissions that were made to the probation officer or to the FBI agents in the 302s? No, that was to the FBI agent in the 302s, and that can be found at paragraph 40 of the pre-sentence report. He stated that he viewed pornography, including child pornography, every day. In the last few months before the search, he had viewed the pornography three to four times a week. He also saved child pornography on CDs, which he produced himself by downloading child pornography images from the Internet and burning them to a CD. So we have the CDs with the child pornography images. We have his admission that he was searching for and finding child pornography images in order to make a CD. He has to download those images, and then the term is burn them to a CD. I'm sure my ignorance about file storage and whatnot . . . First of all, how many images were on the CDs? Well, that's not in the record, and that is a function of the fact that the defense didn't object and were hampered, as in Gonzales-Aparicio, were hampered by that, that we don't have a fully developed record on this point because there was no objection below. So there's nothing in the record that would suggest how many images were on the CDs, which images were on the CDs, how many were in the temporary Internet cache that were counted in that 1,200 . . . Well, if the record shows that he had knowledge of the files on the Internet cache, I guess it wouldn't make any difference because he has the CDs there, and everybody agrees that for some reason or other they came up with a total of over 1,200 images. Is that right? That's correct. The enhancement was for more than 600, but the evidence, as put forth in the pre-sentence report, the number is 1,202 images. That's correct. So the government is relying on this Court's decision in ROM where that defendant would look at child pornography images on his screen, he would enlarge some of them, look at them, and then by his own admission, delete them. And if that can be considered knowledge of and access to images in the temporary Internet cache, our position is that here the defendant did at least as much, if not more, by actually manipulating the images, transferring them to CDs. In other words, he was, in effect, reproducing them and putting them on CDs. So that shows, unlike the other cases in Kaczynski and Flyer, where there was absolutely no reason to think... Well, to explain my ignorance about the Internet, I mean, if you had a, on your screen, if you had a porno image on your screen and you wanted to copy it to a CD, would you necessarily know that it was also being stored in your cache file at the same time? No, you wouldn't necessarily know that. Unless you were pretty sophisticated. Unless you were sophisticated. But the same could be said for the defendant in ROM. He never evidenced any knowledge that he knew they were in the temporary Internet cache. He just, the key statement that the Court made was that he, while the images, I'm quoting now from 455 F. 3rd at 998. While the images were displayed on ROM's screen and simultaneously stored to his laptop's hard drive, he had the ability to copy, print, or email the images to others. Thus, this evidence of control was sufficient for the jury to find that ROM possessed and received the images in his cache. At the very least, I think, we have the images on the CD, and the images in the temporary Internet cache, even if he didn't, even if the Court were to find that he didn't actually know they were there or that he didn't access them and use them, it is relevant conduct to the evidence that we do have on the CDs. But we don't have, but the record doesn't show how many images were on the CDs, right?  So you need more than 600 in order to justify that. To justify the enhancement. Right. Correct? That's correct. But, of course, we are in plain error, and also under plain error, if we get, we submit there's no error, the error's not plain, but even if the error was plain, it's the defendant's burden in plain error to show that the outcome would have been different. And here, again, relying on the 3553A factors, which were what drove the sentence here, the defense can't meet that burden of showing the sentence would have been any different. And that's because the district judge pretty well indicated she was going to impose a 121 sentence. Yes. Statutory maximum sentence. Statutory maximum for the reasons that she listed several times. And if the Court recalls, during the sentencing hearing, the Court did discuss several different... Can you point to a case where we've said in this context that even though there was error, it's not plain error because in the sentencing context, the defendant's substantial rights weren't affected because the district court judge would impose the same sentence? Well, there's Munoz-Camarena. Is that what we said there? Yes, pretty much. Pretty much? What do you mean by pretty much? Well, in footnote four in that case, now I'm at 631F3rd at 1030. In that case, there was no dispute about the guidelines calculation, unlike here. But the Court is talking about United States v. Manyweather and saying that that Court didn't decide anything about whether harmless error review is available in the context of an incorrect guidelines calculation. It's distinguishable. So I think that's what's applicable here. I thought we had a recent case by Judge Graber where she said that basically there's no harmless... In the sentencing, if you make a mistake in calculating the guideline range, it goes back. Well, I guess I'm not familiar with that. It may not have been a harmless error. It may not have been a plain error review. It may have been just regular error. Because I did look for cases that would support our position. And in plain error, everything sort of flipped around. We're not in harmless error anymore. But your basic point is there wasn't error here. Our basic point is that there was no error, but that even if there was error, it certainly wasn't plain. So what do you say about counsel's argument regarding your breach of the plea agreement in your red brief? I'm not sure I understand that argument. But if counsel's saying that we are arguing that there were sadomasochistic images, we're not. We're just arguing that the court's sentence was reasonable. The exact language in the plea agreement, by the way, says the government has no evidence that... defendant possessed portrayed... possessed images that portrayed sadistic or masochistic conduct. And I don't... I honestly don't believe we've ever breached that sentence. I don't think we did anything in our red brief that would contradict that. I think all we did was say that the district court's sentence was reasonable and that if the district court wanted to include the four-level enhancement for the sadistic and masochistic images, that was within her broad discretion. Any others? Okay. Okay. David Zuckman again. I have two brief points. The first is that the government agreed in the plea agreement to maintain the view on appeal that the calculations in the plea agreement were correct. They are now arguing, even at oral argument, we now have a relevant conduct argument as to why these images could be counted. That is not being faithful to the plea agreement. My second and last point is, this is also Ressam error. That's the famous case out of Washington about whether you have to keep the guideline range in mind. Now, of course, that case has gone en banc. Your honors know better than I how Ressam's going to survive. But it's very clear that the guideline range did not matter to the judge, that the judge was going to impose 120. She had to calculate the guidelines. She calculated the guidelines. She did it correctly. First, she did it incorrectly, and then she did it correctly. And then she went through all the other factors, and she said 120 months was an appropriate sentence. Correct, for a 65-year-old man to five years. She looked at all the conduct that was involved and came up with that sentence. That's true. Didn't give much regard to the mitigating factors, though. With that, I submit. Thank you, your honors. Thank you. United States v. Gillespie submitted at this time. Our next case for argument is United States of America v. Stephen Eric Prowler.
judges: Conlon, Pregerson, Paez